Good morning, Your Honor. May it please the Court, I represent Douglas Kent, not Mr. Cashman, who's not here. Yeah, but I like to say those. I like the ring of the other name. Nikolayevich. Yes, sir. I mean, Kent is flat. Douglas Barry Kent. Douglas Barry Kent. Yes, sir. Yeah, you know. On June 2nd, Judge Craigerson. I'm trying to be humorous. I understand, Your Honor. Yes.  Thanks for getting the laugh. Go ahead. On June 2nd of this year, the Supreme Court issued an opinion in the case of Richland Security Service v. Michael Chertoff, which is directly on point in connection with the statutory construction issue in this case. I told Mr. Polyakov this morning that I had recently read that case. I would cite it to the Court. But because I didn't give him notice of it until this morning, I told him I wouldn't argue the case to the Court as a courtesy to him. When did you find out about this case? About the Chertoff case? Yeah. Late yesterday evening. I can tell Your Honor that, as I'm sure your law clerks did, I had an associate updating the law for me, and I didn't turn my attention to it as soon as she did. My apologies. I think that the issue, however, is not that significant, because if I may say so, I think the argument that we made on behalf of Mr. Kent here on the statutory construction issue is the same argument adopted by the Supreme Court. And if I may begin a bit on the statutory construction issue. Are you going to rely on that case? Yes, Your Honor. Are you going to rely on that case at all? Yes, I am, Your Honor. I'm at a bit of a difficulty here because of my own lack of diligence and not having seen it until yesterday. Well, you know, we can, well, the government, have you seen that decision of the Supreme Court? Your Honor, my name is Steve Poliakoff. Poliakoff, yeah, okay. I'm representing the United States. Mr. Hannon informed me of this decision just a few hours ago. I did not have a chance to fully read it. I took a very quick look at it in the library, but I have not had a chance to study it and formulate it. Okay, well, what if we just allow him to argue it, and then when this, and you respond, and once this is all over, we'll give you an opportunity to each file simultaneous briefs on the applicability and the persuasive power of that case. Yes, Your Honor. Is that okay? Yes, Your Honor. All right. Thank you, Your Honor. I do agree. Well, the government didn't find the case either, so. I'm not certain that forgives me. No, no, it's all right. To Mr. Kent, the significance in this case is quite apparent, because he spent over a quarter of a million dollars defending a lawsuit brought by a foreign national against him when he was in Vladivostok, Russia, working for the United States as a foreign service officer, our highest consul. So it's obvious the significance of it to him. Actually, he's thankful that he's here because of the decision of Judge Trott in 2006. Otherwise, he would have had to defend a multimillion-dollar lawsuit against a quadriplegic whose specials in the case were $10 million. So his stake in this case is obviously important, but this case, as many before the Court, has far broader significance. And the far broader significance is clear from the fact that Mr. Kent is one of thousands of foreign service officers and other federal government employees who are now sent out on the front lines all over the world more and more every year to work on behalf of the government. And those foreign service officers undertake that hazardous and dangerous work with the promise, under the Federal Tort Claims Act and the Westfall Act, that if they get into a problem, the government will stand behind them if they are sued. That was what was promised to Mr. Kent in this case. And therefore, in looking at the rights of a foreign service officer to be immune from these types of suits, that brings us to the EJIS statute. And I would suggest that the Macarazzi case. The Macarazzi case, you're exactly right, Your Honor. The Department of State, Your Honor, at DuPont Circle in Washington, D.C., Macarazzi, a Georgian diplomat, slaughtered a family in a traffic vehicle accident. I think his blood alcohol was 3.5. The State Department compelled the Georgians to waive his immunity so that he could be criminally prosecuted. And the Georgians and the Russians have always held that against the United States. And the record in the case before Judge Trott makes clear, as Your Honor understands, that Mr. Kent was turned into the Russian version of Macarazzi. And the facts of this case can only be known from Mr. Kent because the government relies upon the police reports that were done by the Russian police, notoriously corrupt. So the point that Your Honor is making is that these things happen all over the world. They happen in Kenya. They happen in Baghdad at the Green Zone. And there is an obligation on behalf of the United States to protect these people. And if they choose not to, to give this Court a reasonable explanation as to why they're not going to protect these people. Well, just a minute, Counselor. Let's get back to the actual situation here. You've got two problems which we need to discuss. One is, did you file in time to get anything in the first place? And the second is, even if you're right as to the interpretation of the statute, did what the government argue, was it so unjustifiable, so out of it, that we should therefore give you attorney's fees? Now that, even if this case from the Supreme Court is going to help you all you want, it seems to me you have two big hurdles. The first is, why didn't you file on time? And the second is, if every court's going along until we get to Judge Trott's court, and if everybody's saying that the government is correct in what they were arguing in this particular matter, as to whether they ought to defend your client or not, why was it not justifiable for the government to argue it? On the timing issue, Your Honor, the petition was filed timely. Well, how could it be timely? I mean, it wasn't done what it was supposed to be done. In order to make it timely, it had to comply with the local rules. It wasn't as if the council who was filing this hadn't been in district court before, didn't know what the district court was doing. They'd filed five different motions before that. Electronic filing system was the same, and they were supposed to file and have on the cover page a date and time for a hearing and all of those things to be set up. And they didn't. And so the district judge said, No, in my discretion, if you're not going to comply with the local rules, I'm not going to hear your motion. And then the council took, not only immediately upon getting that decision, but then took more time. Another five or six days to do something about that. And the timeline ran. And the court said, You're out. Discretion. Now you're asking me to say that the old district judge who's sitting there, who has all these court rules set up, who has them out there so everybody knows what they're supposed to do, should be just absolutely abuse of his discretion to say that council ought to follow those rules. Your Honor, I'm sensitive, knowing the panel here, to the need of a district court judge to be able to manage his or her docket in this case. The facts, however, are that the application for attorney's fees was filed timely. Judge Burrs, on his own motion, said two things. Number one, it's not timely because he mistakenly believed that Mr. Kent had only 30 days. He was wrong about that. The second issue that he put into his decision after having been reversed by this court was that we hadn't called to ask for a hearing ahead of time. And the date on the cover of the pleading, which is in the docket here, is the date that the pleading was filed. There's a time there also that you put in once you get the time for the hearing. Fortunately for Mr. Kent, my mistake in putting the date of the pleading on the cover is deemed by the Supreme Court in Scarborough v. Principi not to be an act that causes this to fall with outside the jurisdiction of the district court. Scarborough v. Principi was a case involving the Court of Veterans' Appeals. The attorney in that case had actually filed his petition too early. The clerk held it until the time ran, then filed it. And then the government opposed it after the time ran. The government said, oh, you didn't allege that the position of the government wasn't substantially justified. Aha. Therefore, you're out of time. The lawyer filed an amendment. And the Supreme Court said that it's, in essence, the petition process is a notice process and that he had filed sufficient notice. The allegation is something that goes to the merits of the proceeding. And that was excused. And the Supreme Court said in particular that the notion of Rule 14, relation back of pleadings, permits the relation back of the amendment there, which added the substantially justified language to the original petition. And then finally, in a, in what I think is a notion of obviousness, the Supreme Court said, and beside, the government wasn't prejudiced. It's the government, and they never asserted that they were prejudiced. And the government in this case has never asserted that it's prejudiced. The only party that indicated that it was prejudiced is, is Judge Burns. And I apologize to Judge Burns in my pleading with respect to that. But if a lawyer gets an order from a judge that says, you have these two defects, one I know is a matter of law he's wrong about, and the other has to do with scheduling a hearing, and he says, if you want it refiled, correct these issues, I'm thinking to myself, that's what I'm supposed to do. I consider that akin to a telephone call from the law clerk saying, hey, by the way, you know, you didn't call to get a hearing date. Oh, I'll take care of that. And so that issue, quite frankly, is, is taken care of by Scarborough v. Principe. It, it, it is an abuse of discretion. And in any event, when, when Judge Burns ruled on our later amended Milk Pro Tonk petition, he starts off in his, in his pleading, he says, he says, well, I'm not going to consider the previously filed application. I'm only going to consider this one. And then he says it's out of time, but then he goes back and defends his earlier order. So, I mean, it seems to me the judge can't have it both ways. Those two motions and those two orders merge, and they're here for appellate review. And, and my position here is that the Principe case protects Mr. Kent from what Judge Burns said. It protects him from having called for a hearing ahead of time. I must also say that when this case was called here, it was called with passion as a party. He's not a party here. The, the district court in San Diego kind of didn't know who to call whom. The same thing is true of this circuit, because the petition for certification here is, in a sense, neither fish nor fowl. It's my experience that courts outside of the District of Columbia, where these things appear to be more common, sort of don't understand how to, how to deal with them. So, that's my answer to the technical objection that the government has, I think, elevated way beyond reason. Well, I can understand your argument, and I allowed it, but here's the two things I see. Number one, attorney's fees issues in cases are something courts deal with all the time. We have rules set out for attorney's fees problems. Those rules are to suggest how we're to deal with those, because they come in every case, and now they become almost as big a deal as the case themselves. And the rules are set out. Yes, sir. And the district court put the rules together. And not only that, but when getting the decision, it wasn't an immediate, well, you're wrong, and file immediately, but another seven days went by. And if I start looking at all the time that went, it seems to me that one can hardly suggest abuse of discretion, taking the devil's advocate approach. Your Honor, the Supreme Court addressed the point. Well, let me. I mean, we have cases where a local rule will provide that if certain conduct doesn't take place by counsel within a certain deadline, that the case can be dismissed for failure to prosecute. But then we have cases that tell us that, well, you just can't apply the rule that strictly. You've got to give counsel some slack, and you've got to let them know what the problem is and give them time to correct it. We have cases. In that area, I'm sure. And so as far as what Judge Trott said and the comment that that may be out of So in Boise, Judge Trott's first trial was before me when I was a municipal court judge, and I believe it was 65 or 66. And Judge Trott was also the U.S. attorney, ran the district attorney's office in L.A., and was head of the criminal division of the Department of Justice when Ronald Reagan was president. And so his comments, as far as I'm concerned, carry great weight. And it is the Ninth Circuit case. The worry that I have, and I wasn't trying to disparage Judge Trott's The worry that I have is that now I have to find that the United States opposition to this petition was substantially unjustified. Your Honor, I think Well, I don't have much problem with that because I don't It's hard to understand why the government of this great country couldn't stand behind one of its front-line State Department officials in a place like, where was it, Kamchatka? Vladivostok. Vladivostok. Judge Pregerson met? That's almost within the time zone of the Ninth Circuit. Judge Pregerson, may I suggest, I mean, I heard your comment about prosecutors earlier. I'm a former prosecutor. But I can conceive, Your Honor, of a circumstance under which the State Department could be justified in actions such as this. I can conceive of that. So I think Judge Smith's question is an important one. In Wang v. Horio, this Court avoided having to get into the structural issue by concluding that the government's position was substantially justified. But first, Your Honor states the test differently. There is a presumption when you win that the government's position is not substantially justified. The burden of proof is on the government, and that's clear under the Aegis statute because the Aegis statute is very broad. It says everybody gets fees unless the government's position is not substantially justified. So what's the test? The test is whether a reasonable person would find their position substantially justified. Now, the Court has to look back at not just the legal position that was taken by the government in this Court and before Judge Burns, but the conduct of the State Department before the Department of Justice ever got involved. And the conduct of the State Department started in Vladivostok when they blew Mr. Kent off. Now, what is in the record from the State Department, Mr. Kent's employer, that justifies their decision not to protect him in this case? Nothing. I hope that the tape of the oral argument in 2006 is still available. I submitted our transcript. It was one of the most amusing and interesting arguments I've ever participated in. But the government, the Department of Justice, said we're not speaking for the State Department. The State Department's not here. We don't know what the State Department's reason is for this. We don't know if the State Department has any specific policy regarding Foreign Service Officers overseas. We don't know why we did it in this case. They're not going to tell us. They consider it to be privileged. Now, that's fine. There are certainly mechanisms if they wanted to come to this court and share with this court classified information of a serious nature, saying that they had to do this because they didn't want to offend Putin and the Russian Duma, that they didn't want to offend Congressman Kurt Weldon, who was the driving force behind this lawsuit, this civil lawsuit. But they haven't done that. Well, but you've gone to a totally different issue than I think is important here. The important issue here is, should we, in a torch situation such as this, where our employee was not doing what he was asked to do, in other words, have insurance which would have covered this thing and taken care of it, should we, in that torch situation, absolutely, given this statute, automatically step up and pay? You know, Your Honor, That's the question. It's a question that the government raises. The fact that Well, that's the question that's in front of me. Yes, sir. That's the statute. Well, the statute And, frankly, if Judge Trott hadn't have gone to D.C. to find the appropriate statute for him to make his particular situation on, his particular ruling, he couldn't find a jurisdiction to make the particular ruling that he made. Not to suggest that it was wrong, but just to suggest that was the exact place to have that particular situation in that case to make some kind of a payment. I mean, if we looked at our cases, we had plenty of district courts who were looking at it saying, well, I don't think so, and then to suggest the government had absolutely no justification for what they argued. The test is whether the government's position is a reasonable one. I agree. And they have the burden. Now, there are two things to talk about. One is the legal issue, and you get into choice of law. And the other is the actual conduct of the State Department. Now, the government says, because the legal issue I have to look at the conduct of the State Department in making this. In what part, in what case? The case of Poole v. Rourke, which is a district court case, cites numerous cases from this circuit that says that when the court is testing the position of the United States, it reviews the conduct of the United States in its totality, going all the way back to the So it's a totality of circumstances analysis here because you can't separate the legal arguments that the Department of Justice has made for the Department of State here from the actual conduct of the Department of State, particularly when the Department of State doesn't step forward and tell the court why. Well, the reason I ask the question is this isn't the only statute where we look at whether the government met a burden of justifiably doing what it had to do. We do this in Social Security cases as well. And we test the substantial justification of the government's position. And we have a lot of law in that area. Yes, sir. The same standard being used. And I've never seen it used, all of the things that have happened underneath what happened with the AJ or what happened in the district court. I'm talking about what does the government argue to courts that are in front, that have to make these decisions? Was their argument so out of it that there was no reasonable justification? Your Honor, the cases in this circuit that set forth the test I've just described are legal women voters versus the FCC, 798, Fed Third, 1255. Are these in your brief? They are not. These are cited by the court in Poole versus Rourke. Yeah, we have that. There are cases in our brief that stand for that proposition. Why don't we hear from the government? We have 10 minutes overtime. Thank you. Yeah. Mr. Poliakoff. May it please the Court. My name is Steve Poliakoff. I'm an assistant U.S. attorney, and I'm here today helping to represent the United States. The issue before us arises from an automobile case, plain and simple. Appellant, Mr. Kent, petitioned for certification, is acting within the course and scope of his duties as a federal employee and was certified by this court pursuant to the Federal Tort Claims Act, 28 U.S.C. 2679 D3. In doing so, he challenged the United States' denial of vicarious liability for his alleged tortious conduct at issue in the automobile accident. Scope of employment is an issue that's fundamental to denial of vicarious liability in tort suits. Now, the appellant represented to this court an oral argument that this was a tort case and not a contract case. And all the pleadings in this case have been under the same case number as the underlying tort case. Indeed, the court's order denying EJIA fees was captioned as well as Caution v. Kent. This is significant because EJIA specifically precludes attorney's fees for cases sounding in tort, and this case sounds in tort. We have an issue here where the government waived sovereign immunity. And when you waive sovereign immunity as an EJIA ---- You're kind of talking about the, you know, run-of-the-mill case that you see in district court. Maybe it's not run-of-the-mill. But, you know, where you have a postal truck involved in an accident with a civilian vehicle, and the postal vehicle is at fault and the government has to pay for it, the government would say to the plaintiff's attorney, now you can't come against this for attorney's fees. That's where it comes into play, right? Well, Your Honor, EJIA is very specific. It allows ---- I mean, what if you had the postal vehicle in this accident and you said to the plaintiff, we're not going to cover you. We're not going to stand behind you on this. You're not in the course of your employment. You are off on a frolic and detour of your own. Okay? And then he had to get lawyers and defendants to defend him, and he got ---- And he came looking for his attorney's fees because he was successful. Several issues there, Your Honor. First, it was a very specific waiver of sovereign immunity in terms of attorney's fees, and Congress specifically exempted or excluded tort cases. They didn't make that exclusion to prevailing plaintiffs. It excluded all torts, even though there would be no recovery where the government was suing. But you think Congress had in mind a case like this where the government doesn't stand behind a counselor official in a foreign country who gets involved in an accident while he's in the course and scope of his employment? Your Honor, there are several issues there as well. First, Congress ---- the EJIA statute was enacted in 1980. The Westfall Act occurred in 1988 subsequent to it. Since EJIA has been enacted, Congress has responded and has amended the EJIA provisions and allowance for attorney's fees under very specific circumstances. We cited those in our brief, but specifically in 1985, Congress amended it to allow attorney's fees under the Contracts Dispute Act, and again in 1992 for attorney's fees for cases appearing before the Court of Veterans' Appeal. And those, in fact, were in response to case law. So Congress is aware that you can amend it and broaden it, and it has done so, but it's specifically not done so in cases sounding in tort. In addition, we have the case law cited from appellate circles. But his claim against the government for certification, that's not a tort case. Oh. Your Honor, it arises and it sounds in tort. Indeed, as the deed ---- Why don't you know sounds in tort? Why does it sound in tort? Sounds like he's trying to get the government to give him a certification. Several points again, Your Honor. First, when this case appeared before the Ninth Circuit previously, the Court was very careful to say that it was ---- it didn't know why the government chose the position that it did, but there could be reasons. And, in fact, there may be reasons that the government may choose not to certify a particular Federal worker. In addition, D.C. case law ---- Do we know of any other cases where this has occurred? Yes, Your Honor, we do. And we cited those in our brief, three specifically from appellate circuits throughout the country. First, in D.C., the case of Turner, in which the Court specifically held that you cannot parse a tort case into tort and non-tort issues. No, I'm talking about a counselor official. That's what I'm talking about. I am unaware of any cases specifically dealing ---- That's what we're talking about. I am unaware of any specific cases dealing with a counselor official where petition for certification was denied and they received EJIA fees. I would also cite, Your Honor, the case of Campbell, which is ---- which was a Ninth Circuit ---- Are there any other cases involving ---- he was the head official there. Was he not? I believe he was the Counselor General in Vladivostok. Counselor General in Vladivostok. All right. Now, do we have any other cases where a counselor official got involved in an accident and the government refused a certification? I'm unaware of them, Your Honor. However, when one looks at the factual nature of this case ---- That's what I asked you before. And I will turn to that in a few moments, if I may, but when one looks at the factual nature of this case, as Judge Smith noted, Mr. Kent did not have insurance, as he was instructed to do. And there may be issues there ---- But the government have reimbursed them for the insurance. I don't know that, Your Honor. They ---- but as we put in our ---- I believe it's in the ---- Well, let's say I drove here today and I didn't ---- my insurance lapsed and I didn't know about it. And I drove, you know, from the woodland hills and I come out here today and in the course of my employment and I get into an accident. Well, I think it's quite a different situation, Your Honor, and we would have to look at that in terms of the scope of employment. I think there are much larger issues than what we're dealing with in Mr. Kent's case. As a matter of fact, I may have thought about that, thought of a way I could save some money on insurance. Well, and that's, I suspect, the reason why the State Department is very clear in their notices to a Foreign Service officer and a consular general that before you go abroad, you need to have coverage and local coverage for your own car so that these circumstances don't arise. Is that when they're on a 24-7 duty status? Again, a very interesting question, Your Honor. While Mr. Kent was on duty 24-7, he was not working 24-7. And that was something that I think is very important to note. But I also would like to submit to the Court that ---- I don't really understand that. He was not working 24-7, but if something came up, he would have to be there. He would have to be on his toes to represent the United States. There's a difference between having to be available and actually working. The same way, for example, that we have a physician who might be carrying a beeper or a pager and be available, but not actually working at the same time. I would, however, also submit to the Court that in the Campbell case, which was a Ninth Circuit case, this Court held that there were no attorney's fees for covering interest on a judgment because you cannot recast what is part of a tort case or a tort claim as a non-tort. There is no existence separate from that of ---- no independent existence separate from the judgment. And finally, we have an Eighth Circuit case, the McLarty case, which notes that the wrongful disclosure of tax returns is a tort and attorney's fees may not be awarded under AJA. When we look at the legislative history here, it was very clear, again, that Congress was able to amend when it saw fit and did not see fit to do so here. But this is the first time this situation has arisen that we know of. Where I would respectfully distinguish that, Your Honor, is that it's the first time we've seen it with a consular general who failed to obtain insurance in a foreign country when he was specifically instructed to do so, and the State Department and, well, the Department of Justice refused to certify him as being within the course and scope of his duties. But the fact that it is an issue of first impression would suggest, wouldn't it, by Gutierrez v. Barnard, our own case in 2001, that Kent shouldn't get fees because it should not be awarded where the government's litigation position contains an issue of first impression? Precisely, Your Honor. This was a case of first impression, and the United States was substantially justified in the position that it took. Although this Court disagreed with the position of the United States, it was one where it was subject to different interpretations. So how do you account for the fact that certification came forward? In reviewing this case, first we have to note that there was a de novo review of the facts underlying the United States' decision by the district court. The district court supported the position of the United States that certification should not be awarded. However, when the case got to the Ninth Circuit, this Court found that the choice of law decision was not one that the choice of law from this Court was different than the one asserted by the district court, the United States, and Mr. Kent himself. Again, we have different facts, different law. It was a case of first impression and subject to different, different interpretations. There was a de novo review. This Court disagreed with the position of the United States. But the record showed that the United States' position was reasonable. And, in fact, when you look at the facts of the case, Mr. Kent was driving his personal car. He was on a personal errand. His own declaration said that his trip to the trip to the United States was on a personal errand. I'm sorry, Your Honor. They asked him to take his personal car over there. They asked him to take his personal car over there to save them money. Your Honor, I don't believe that the State Department requested that he take his own car over. People who were being sent abroad in that circumstance were instructed, if you take your own car, you need to get insurance. He was they were complaining about the expense of his using a government car. They It was something that the State Department suggested that if you have your own car there and are able to save expenses, it may be something that you might want to consider. But he was in no way required to use that car. He, again, was on a personal errand, and he never claimed, indeed, Mr. Kent never claimed he had to use his personal car. That was something that was lacking from any of the pleadings that Mr. Kent submitted. When we look at the case of Poole, it was very interesting as well, because when we use that analysis, it shows that the government's position was quite reasonable. And specifically Well, did the State Department have a vehicle or available for him at all? Yes, Your Honor. The chauffeur and all that. Yes, Your Honor. Mr. Kent could have used a State Department vehicle. But in terms of looking at substantial justification, it's important to note, as they noted in the Poole case, the government can take a position that is substantially justified and yet lose. And that's the circumstance that we have here in terms of substantial justification. The position of the government was substantially justified, albeit upon further review. In this case of first impression, this Court disagreed with us. Thank you, Your Honor. Thank you. All right. You're way over. I think you've covered everything. May I ask the Court for that? An opportunity, because the questions of the Court have raised a number of factual issues that I think are important and I'd like to try to address that were raised by the Court. May I, Judge Prager? Yes. Go ahead. It won't take long. Judge Hall, the insurance issue, the facts are that an employee of the embassy told Mr. Kent that he had insurance coverage for 30 days and he made an appointment with him to see the local insurance agent that the embassy uses. And relying upon that, Mr. Kent drove for 30 days. This accident took place, I believe, a day or two before he was supposed to have the appointment. That advice to Mr. Kent was in error. The insurance that Mr. Kent would have had would not have covered the lawsuit that was filed against him in the United States by Mr. Cashin. The insurance that they recommend only covers you under Russian law where you are at the time. The question Your Honor asked about whether this has happened before, whether there's a consul overseas who's been scoped or not scoped, it has happened before, but it's not on the record because the district court wouldn't allow discovery of this issue. I represented Dirk Dikerman who was in a road accident in Kenya in the dark causing the death, ironically, of his children's teacher. That case was filed in the District of Columbia and the Department of State and USAID scoped him in that case. I can't for the life of me understand the distinction between the two of them except for the atmospherics that are a mystery because the State Department never tells you. So if we had had discovery in this case, Your Honor would have heard not just about that case, but she would have heard about cases in which certain individuals who are going to pick people up at the airport are either scoped or not scoped depending upon circumstances that never get explained. So, Judge Smith, the important thing here is that on substantial justification, a reasonable person must believe that it was substantially justified. Now, the government could satisfy that test here except they've chosen not to. Now, the choice of law issue, I agree that the case law says that the government is taking a position in an issue of new importance. That can be defensible. However, the Department of State never made a choice of law determination. The choice of law issue only arose when we filed our petition and we pointed out, as we had to, that the first issue of consideration is you have to make a determination as to choice of law. But Judge Trott didn't endorse your request. No. He went on a request of his own. He did. And we really are talking about on a petition for certification and as to the opposition to the petition and as to the judge's decision then whether that was substantially justified as to the district court on an abuse of discretion. Your Honor, the, no, that's, let me make it simple. The issue is not whether the State Department's selection of the choice of law. No, I'm not talking about that. Well, I am. Well, I understand. But the problem is that what you're really saying to me is that in this particular situation where there was a petition for certification and this court finally said there was certification, the government arguing against it all the way, now going back to the district court where the district court has to say whether the government's position was substantially justified and the district court says that the government's position was substantially justified, and now I have to say that they were abusing their discretion to find that in order to sustain what you want. Judge, the question is first, what was the position of the United States? The position of the United States was that of the State Department, that they were not going to consider Mr. Kent to be acting within the scope of his employment. Mr. Kent's position was the contrary of that. That dispute had nothing to do with choice of law. Choice of law was simply the vehicle that was utilized by the court to decide the case. And, in fact, I don't believe that the choice of law determination is outcome determinative here. The choice of law, what it does here, Judge Trott recognized, is it provides consistency. So hereafter, the State Department knows what law to use. I can tell you there was no discovery here, but I can tell you that if you represent somebody in these circumstances and you go to the State Department, they'll say to you, find us some law, any law, that would help us scope this person, because we want to scope that person. Now, the point I'm making here, because this is outside the record, but the point I'm making here is that the statute says unless. So the burden is on the government to explain the reason. Now, their reason was that the choice of law was a novel issue. So what do they get? Their legal argument in the Ninth Circuit is somehow defensible. You want to carve out those fees? The government never attempted to justify its decision in the first place. The — Judge Hall, you're correct that Mr. Kent was specifically asked to use his own vehicle to save money. And there is in the record a statement by Mr. Kent that he is evaluated as a consul with respect to how efficient he is in making use of the resources that are at his consul. So had he not used his own vehicle, he would have suffered what he eventually has now suffered, lack of promotion, because he's not able to accomplish what it is that his employer wishes. I have not, Judge Pragerson, had a chance to articulate what I think the Court's construction of this statute should be, but I'm holding everyone up. If I might have just two minutes, I would like to suggest that the construction of the statute that the Supreme Court, frankly, would adopt. And I believe that the Turner can — Frankly, isn't that something you're going to brief anyway, because you've got a case you say is dead on point? I'd be happy to, Your Honor. All right. And with respect to Turner, the Turner decision in the D.C. Circuit, which I think — well, it's a very odd decision, but I think that would be a different decision now after Richland v. Tripp. Well, that's the same argument. Yes, sir. Thank you very much. Thank you. Well, we'll wait to get to what's a reasonable time to get these. What time would you like? Two weeks? Certainly. Your Honor, I am about to go into trial on November 4 as well as December 3. I'm happy to work with the Court and Mr. Hammond as best I could. What — you would ask that these be presented on what date, then, to the Court? Well — Simultaneous letter briefs. Yes, simultaneous letter briefs. Twenty days. Twenty days. Okay? Yes, Your Honor. Thank you, Your Honor. All right. All right. Go and drive carefully. Thank you, sir. All right. Thank you. This Court, for this session, is adjourned.
judges: Pregerson, Hall, Smith